COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Fitzpatrick and Senior Judge Hodges
Argued at Alexandria, Virginia

DENISE KELLY OBRIEN, SOMETIMES KNOWN AS
 DENISE KELLY O'BRIEN

v.      Record No. 1451-94-4             MEMORANDUM OPINION*
                                      BY JUDGE WILLIAM H. HODGES
COMMONWEALTH OF VIRGINIA                  FEBRUARY 20, 1996

              FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        Donald M. Haddock, Judge

           J. Amy Dillard, Assistant Public Defender, for
        appellant.

           H. Elizabeth Shaffer, Assistant Attorney General
           (James S. Gilmore, III, Attorney General, on
           brief), for appellee.


        Denise Kelly OBrien (appellant) appeals from a judgment of

the Circuit Court of the City of Alexandria finding her guilty of

embezzlement between April 1 and September 30, 1993, and between

October 1 and December 7, 1993.  She contends that her

convictions should be reversed because the evidence was

insufficient to prove beyond a reasonable doubt that she

committed the charged offenses.  We disagree and affirm the

convictions.

        "On appeal, we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom."  Martin v. Commonwealth,

4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

_____
        *Pursuant to Code § 17-116.010, this opinion is not
designated for publication.

From June of 1992 to December of 1993, appellant was employed by Teddy Bear Day Care, which operates three day care centers for children in Alexandria and one in Fairfax. Originally hired as a part time office assistant, appellant made computer entries of payments received at the Alexandria centers. Appellant subsequently became a full time employee. In April of 1993, appellant was given the responsibility of collecting payments several times each week from the locked cash drop box maintained at each of the three Alexandria centers.

When cash was received at each center, the director or a teacher would count the money in front of the person making the payment and place it in an envelope with the child's name and the amount written upon it. The employee would issue a numbered receipt from the cash receipts book and record the number of the receipt on the envelope. A duplicate of the receipt remained in the cash receipts book. The employee sealed the envelope and placed it in the drop box. In addition to recording the payment in the receipt book, the employee would note cash payments in the "message book" and on the account card kept for each child.

At two of the Alexandria centers, appellant had the only key to the drop box. At the other Alexandria center, appellant and the director had keys. It was appellant's job to collect the cash and checks from the drop boxes on Mondays, Wednesdays, and Fridays, and deposit the contents at the bank on Mondays, Tuesdays, and Thursdays. Appellant would advise Wanda Webb, the

owner of the Teddy Bear, of the deposit amount.  Appellant would make computer entries reflecting the deposit.

Webb testified that she would record the deposit amounts appellant reported, make weekly totals, and compare these notations with the bank statements.  It was appellant's responsibility to compare the weekly totals with the cash receipt books.

Rosemary Burton, the day care administrator, admonished appellant repeatedly about comparing the actual amounts of cash she removed from the drop box with the duplicate cash receipts.  When she collected the money, however, appellant did not follow such a procedure.

In May of 1993, appellant also became responsible for comparing enrollment figures with the deposit figures.  Appellant did not advise Webb that large amounts of cash were missing, which such a comparison would have revealed.

Webb did not compare her notes concerning the deposits with the cash receipt books until late November of 1993, when she suspected that money was missing.  Webb calculated that from April to December of 1993, there was a shortfall of $22,377.10 in cash deposits to the bank as compared with the cash receipts and enrollment entries on the computer for the Alexandria centers.  In the account of one child $1200 in cash had been received at the center but not deposited in the bank.  Furthermore, after Burton told appellant that she was going to examine the cash

receipt book at one of the centers, the book mysteriously disappeared.

There was no shortfall at the Fairfax center, where appellant had no responsibility for collecting money from the drop box. Moreover, Webb discovered that cash had been lost from the Alexandria centers during the vacation period of each center's director.

Witnesses testified that in the fall of 1993, appellant's financial situation appeared to improve considerably, whereas a few months before she had inquired about filing for bankruptcy. She possessed large amounts of cash, acquired a new car and wardrobe, and provided a spending allowance for her boyfriend.

Once when appellant was too ill to make the scheduled deposit, Burton went to appellant's home to pick up the money appellant previously had collected from the drop boxes. When Burton compared the cash to the receipt books at the centers, she found three cash payments missing. Burton called appellant, who said she had the cash. Burton returned to appellant's home and appellant gave her cash exactly matching the three missing payments. During the remainder of appellant's illness and absence from work, there was no discrepancy between cash received at the Alexandria centers and that deposited in the bank.

"To establish the crime of embezzlement under Code § 18.2-111, the Commonwealth must prove that the accused wrongfully appropriated to his or her own use or benefit, with

the intent to deprive the owner thereof, the property entrusted or delivered to the accused." <u>Zoretic v. Commonwealth</u>, 13 Va. App. 241, 243, 409 S.E.2d 832, 833-34 (1991). To establish appellant's guilt, "[t]he chain of circumstances must be unbroken and the evidence as a whole must be sufficient to satisfy the guarded judgment that both the <u>corpus delicti</u> and the criminal agency of the accused have been proved to the exclusion of any other reasonable hypothesis and to a moral certainty." <u>Waymack v. Commonwealth</u>, 4 Va. App. 547, 549, 358 S.E.2d 765, 766 (1987) (quoting <u>Webb v. Commonwealth</u>, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963)).

Appellant argues that the evidence proved neither the <u>corpus delicti</u> nor that she was the criminal agent. She relies upon <u>Webb</u>, where the evidence was found insufficient to sustain the defendant's embezzlement conviction. In <u>Webb</u>, the defendant's duties of collecting money and depositing it at the bank were shared by other employees of the business. The defendant and others had used money in the cash drawer to make change for customers, to cash personal checks, and for personal loans. Petty cash was co-mingled with these funds, and there was no way to discern how much had been paid out of the drawer in the course of legitimate business. Moreover, not all of the receipts were deposited into the bank. Because of the lack of internal controls present in the business' accounting system and the access of many to the firm's receipts, the evidence was

-5-

insufficient to prove that an embezzlement occurred.  Id. at 35, 129 S.E.2d at 30.

By contrast, the evidence in this case demonstrated that the loss sustained by Teddy Bear could have occurred only through embezzlement by appellant.  From the discrepancies noted between the bank deposit slips and the cash receipts during the periods of the indictments, it was apparent that the three Alexandria centers had accepted cash for which a receipt was issued, but the cash was never deposited in the bank.  The procedure for receiving cash included placing it in an envelope and into the locked drop box.  Appellant possessed the only key to the drop box at two of the three affected centers.

Moreover, appellant was the only person responsible for collecting payments from the locked cash drop box, depositing the funds in the bank, and comparing the deposit figures with the cash receipts book.  However, she never reported that the cash receipts did not equal the cash deposits she made to the bank. In calculating the amount of the loss, Webb compared the deposits to Teddy Bear's bank account with the amount that should have been generated considering the enrollment figures and the tuition rate.  Performing such a comparison, which was appellant's job, would have revealed much sooner than November of 1993 that a significant amount of cash was missing.

Teddy Bear suffered no loss of cash from the Fairfax center, where appellant was not involved with the deposits.

Significantly, during her illness appellant withheld from Burton three cash payments, despite having given Burton what she purported to be the entire deposit. She provided no explanation for this conduct. No cash was unaccounted for during the remaining period of appellant's illness. Discrepancies were present, however, during the vacations of the directors of the Alexandria centers.

The court rejected appellant's testimony that she did not take any of the money for her own benefit. "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). Indeed, "[t]he fact finder need not believe the accused's explanation," Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981), and may "infer that he [is lying] to conceal his guilt." Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (citing Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982)).

The trial judge concluded that the evidence against appellant was "overwhelming." The Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that appellant wrongfully appropriated money entrusted to her by Teddy Bear, that she acted with criminal intent, and that her conduct was designed to conceal her criminal purpose. See Smith v. Commonwealth, 222 Va. 646, 652, 283 S.E.2d 209, 212 (1981).

Accordingly, appellant's convictions are affirmed.

Affirmed.